875 F.2d 862
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Pat CANTERINO a/k/a/ Pat Williams, et al., Plaintiffs-Appellees,
and
United States of America, Plaintiff-Intervenor,
v.
George WILSON, et al., Defendants-Appellants.
 No. 86-6067.
 United States Court of Appeals, Sixth Circuit.
 April 10, 1989.
 
 Before Ralph B. GUY, Jr. and BOGGS, Circuit Judges, and Richard SUHRHEINRICH, District Judge.*
 PER CURIAM.
 
 
 1
 This is an appeal from the district court's ruling in this prisoners' class action suit challenging the conditions of confinement at the Kentucky Correctional Institute for Women (KCIW). This appeal focuses on only one aspect of that ruling: the requirement that KCIW hire a part-time attorney on a temporary basis in addition to upgrading the prison's library. The basis for this ruling was the trial judge's determination that the legal facilities and assistance the women had been receiving did not provide them with minimally adequate access to the courts as guaranteed by the Constitution, and that the women's facilities were not substantially equivalent to those provided to male inmates in Kentucky. Canterino v. Wilson, 546 F.Supp. 174, 216 (W.D.Ky.1982).
 
 
 2
 * In October 1980, female inmates of KCIW filed suit challenging a number of the conditions of their confinement, including the library facilities and lack of legal training and/or assistance. The district judge held a four-week trial, after which he ordered the defendants to update the prison library and provide a half-time attorney for the inmates. The court ordered the parties to brief the issue of access to an attorney and legal materials, after which the court ordered the parties to formulate a plan to provide the female inmates at KCIW meaningful access to the courts. The defendants submitted a plan proposing the hiring of an attorney for 20 hours per week. In July 1982, the district judge ordered that such an attorney be hired.
 
 
 3
 In his opinion, the district judge found that the women lacked any history of "self-help" in the law. He further found that the library at KCIW was inadequate and that the prison had to upgrade its materials, extend its hours, and, in addition, provide the inmates with a half-time attorney to assist them. The court held that these improvements were necessary to comply with the equal protection clause, as well as to provide the inmates access to the courts. However, it should be noted that no inmate testified that they wanted any legal services that they had not been able to receive. Further, male inmates in Kentucky do not have an attorney assigned to their prisons. On the other hand, the Office of Public Advocacy (OPA) spends 96 hours per week at one male prison and 120 per week at another, while their time spent at the women's prison is limited to two to three hours every three weeks. Further, the male inmate legal aides are trained by experienced peers, whereas the women are given a two-week course, but none of their peers is experienced in handling habeas petitions or civil rights suits.
 
 
 4
 After the court issued its initial order, the defendants moved for supplemental relief regarding the order requiring that an attorney be hired, arguing that the female inmates now received the same legal services as male inmates in Kentucky. At this point, the library had been updated, and its open hours had been extended to 15 per week. In addition, the number of inmate legal assistants had been increased from one to four. The defendants stressed the fact that the Kentucky Office of Public Advocacy, a state-funded legal services agency, provides assistance with criminal matters and provides an attorney to KCIW for one half-day every three weeks to assist with civil cases. In addition, the defendants claimed that the updated library and inmate legal aides were sufficient to meet the constitutional standard.
 
 
 5
 The district judge disagreed, and again ordered the parties to provide the inmates with the equivalent of a half-time attorney, reasoning that the law library alone was not sufficient to compensate the women for the lack of a history of self-help which the male inmates had. Subsequently, in September 1986, the defendants filed a motion to amend the earlier orders of the district judge, which motion was denied. The district judge reiterated his earlier finding that the prison library alone, even after being updated, was insufficient to satisfy the right of access to the courts. The court expressly ordered the defendants to hire a half-time attorney for eighteen months to assist and train the female inmates in areas in which they needed assistance. The defendants now appeal.
 
 II
 
 6
 The standard of review in this case demands that we give great deference to the factual findings of the district judge. Kendrick v. Bland, 740 F.2d 432, 434 (6th Cir.1984). Although "[d]eference to prison authorities is especially appropriate when state penal facilities are involved," Newman v. State of Alabama, 683 F.2d 1312, 1320 (11th Cir.1982), "district courts have broad discretion to fashion remedies once constitutional violations are found." Hoptowit v. Ray, 682 F.2d 1237, 1245 (9th Cir.1982). The standard, then, is one of abuse of discretion. Id. at 1246.
 
 III
 
 7
 In Bounds v. Smith, 430 U.S. 817, 821 (1977), the Supreme Court affirmed the Fourth Circuit's determination that North Carolina's library plan "denied women prisoners the same access rights as men to research facilities." The Court began its analysis by stating that "prisoners have a constitutional right of access to the courts." Ibid. The Court then reviewed a number of precedents in which this principle was held to require that indigent prisoners be "allowed to file appeals and habeas corpus petitions without payment of docket fees," id. at 822 (citing Burns v. Ohio, 360 U.S. 252, 257 (1959)); that trial transcripts be provided to indigent prisoners at no cost, ibid. (citing Griffin v. Illinois, 351 U.S. 12, 20 (1956)); and that counsel be appointed when necessary to ensure " 'a meaningful appeal.' " Id. at 823 (quoting Douglas v. California, 372 U.S. 353, 358 (1963)). The Court explained that the guiding principle in these cases is that "States must 'assure the indigent defendant an adequate opportunity to present his claims fairly.' " Ibid. (quoting Ross v. Moffitt, 417 U.S. 600, 616 (1974)). The Court focused on two prior cases, Johnson v. Avery, 393 U.S. 483 (1969), and Wolff v. McDonnell, 418 U.S. 539 (1974), both of which held that in the case of illiterate, indigent prisoners without the skills necessary to present their own cases, their " 'constitutional right to help' " could be satisfied by securing the aid of other, more skilled inmates. Bounds, 430 U.S. at 823-24 (quoting Johnson, 393 U.S. at 502 (White, J., dissenting)). However, the Court noted that neither case had ruled out the possibility that further measures would be necessary to provide truly meaningful access to the courts to inmates. Id. at 824. Thus, the Court held
 
 
 8
 that the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.
 
 
 9
 Id. at 828.
 
 
 10
 In the present case, the prison officials argue that the above holding supports their position that prisoners must be provided with either a library or legal assistance, but not both. However, in Bounds itself, the Court discussed a number of alternatives to providing an adequate law library, stating that although "a legal access program need not include any particular element ... [a]ny plan ... must be evaluated as a whole to ascertain its compliance with constitutional standards." Id. at 832. In other words, the appellants are correct that it is not always necessary to provide both a library and legal assistance; however, they are incorrect in their assertion that a court may not require such a combination of elements. In fact, in Bounds, despite the availability of "jailhouse lawyers, the Court found that an adequate library "or other forms of legal assistance" were necessary to provide constitutionally adequate access to the courts. Id. at 825. Thus, the existence of a law library, however adequate, does not per se eliminate the necessity for further measures to protect the right of access to the courts.
 
 
 11
 We are aware that other courts have found that, in particular situations, both a library and legal assistance were not necessary. In Kelsey v. State of Minnesota, 622 F.2d 956, 958 (8th Cir.1980), the Eighth Circuit found that a particular prisoner's legal needs were met by existing facilities. However, that court also stated that every program "must be evaluated on its own to establish, first, what the prisoners' needs for legal assistance are and, second, whether those needs are being met." Ibid. (citations omitted).
 
 
 12
 In Cepulonis v. Fair, 732 F.2d 1, 5-6 (1st Cir.1984), the First Circuit held that it was error for the district court to have ordered both the creation of a satellite library and the creation of a law student assistance program. In Campbell v. Miller, 787 F.2d 217, 227-28 (7th Cir.1986), the Seventh Circuit held that restricted access to library facilities for maximum security inmates did not deprive the inmates of meaningful access to the courts. The court relied heavily on the Ninth Circuit's opinion in Lindquist v. Idaho State Board of Corrections, 776 F.2d 851, 858 (9th Cir.1985), in which that court stated that "[t]he fact that an inmate must wait for a turn to use the library does not necessarily mean that he has been denied meaningful access to the courts." The Lindquist court held that a prison's adequate library plus well-trained inmate law clerks were sufficient to meet constitutional standards and, thus, appointed counsel was not necessary. Id. at 856. A similar result was reached in Hooks v. Wainwright, 775 F.2d 1433, 1438 (11th Cir.1985), where the Eleventh Circuit held that the Constitution does not require appointment of counsel for inmates who were challenging the conditions of their confinement.
 
 
 13
 On the other hand, in Morrow v. Harwell, 768 F.2d 619, 623 (5th Cir.1985), the Fifth Circuit held that a bookmobile check-out system plus law student assistance did not meet constitutional standards. The court stated that, "[i]n the absence of some sort of direct legal assistance, ..., the inmates must be given access to a library...." Ibid. Further, in Wade v. Kane, 448 F.Supp. 678, 685 (E.D.Pa.1978), aff'd, 591 F.2d 1338 (3d Cir.1979) (mem.), the district court held that law student assistance did not compensate for the inadequacy of the prison's law library, and that the closing of the prison's Law Clinic coupled with the library's inadequacy amounted to a constitutional violation.
 
 
 14
 This court has held, in the past, that when a prisoner is afforded assistance of counsel, and law books were available to the inmate, no constitutional violation had occurred. Holt v. Pitts, 702 F.2d 639, 640-41 (6th Cir.1983). Further, in Glover v. Johnson, 478 F.Supp. 1077, 1096 (E.D.Mich.1979), aff'd sub nom Cornish v. Johnson, 774 F.2d 1161 (6th Cir.1985) (mem.), this court affirmed the district court's decision holding that the law library at the women's prison was adequate even though it was smaller than the library available to male inmates. However, the district court further stated that "the provision of a satisfactory law library does not settle this issue." Ibid. The court thus went on to reject the contention, also made here by the prison officials, that either a library or legal assistance is required, but not both, stating that this was an unduly narrow reading of Bounds. Ibid. Thus, the court required that legal assistance and training was necessary to satisfy the women inmates' right of access to the courts. Id. at 1097.
 
 
 15
 The cases in other jurisdictions which appear to conflict with our decision here are distinguishable from this case for one important reason: none involved a finding by the district court that there was an equal protection violation in that women inmates had less satisfactory access to the courts than male inmates. Kelsey, 622 F.2d 956 (8th Cir.1980); Cepulonis, 732 F.2d 1 (1st Cir.1984); Campbell, 787 F.2d 217 (7th Cir.1986); Lindquist, 776 F.2d 851 (9th Cir.1985); Hooks, 775 F.2d 1433 (11th Cir.1985). That distinction is significant. The fourteenth amendment "requires, even in the context of prison conditions, that any such disparity [between the treatment of male and female inmates] must 'serve important governmental objectives' and must be 'substantially related to achievement of those objectives.' " Bukhari v. Hutto, 487 F.Supp. 1162, 1171 (E.D.Va.1980) (quoting Craig v. Boren, 429 U.S. 190, 197 (1976)). Further, "the cost of protecting a constitutional right cannot justify its total denial." Bounds, 430 U.S. at 825.
 
 
 16
 Here, the district judge found as fact that there was a disparity between male and female inmates' access to the courts. The judge further determined that, to cure that disparity, women inmates needed legal assistance and training on a part-time, temporary basis. The district judge ordered only that this plan be implemented on a trial basis, for only eighteen months. The prison officials do not argue that this disparity serves an "important governmental objective." They argue only that the district judge abused his discretion in basing his finding of a disparity on the women inmates' lack of a history of self-help. However, the district court in Glover, as affirmed by this court, based its holding that women inmates required legal assistance on its finding that male inmates had the benefit of "experienced writ writers" among them while women inmates "have not yet developed this expertise...." 478 F.Supp. at 1097. We did not find error in the use of this reasoning in Glover, nor do we find error here.
 
 
 17
 On the whole, then, we find no reason to afford the district judge here any less deference than was afforded the district judge in Kendrick v. Bland, 740 F.2d 432, 434 (6th Cir.1984). Where, as in Kendrick and the instant case, the district court has had "extended involvement and intimate understanding of the facts and issues joined in this action," that judge's determinations must be given great deference. Ibid. Here, the district judge's extremely detailed and carefully drafted opinion, 546 F.Supp. 174 (W.D.Ky.1982), evinces his "extended involvement and intimate understanding" of the issues, both legal and factual, involved in this case. We find no basis for disturbing his findings and conclusions. Thus, we AFFIRM.
 
 
 18
 Richard SUHRHEINRICH, District Judge, concurring.
 
 
 19
 I am in substantial agreement with Judge Boggs' opinion but write separately to emphasize my feelings on the affirmative relief imposed by the district court. During the past four years, I have witnessed an ever-expanding volume of meritless cases generated by prisoners, many prisoners having apparently made a hobby of writ-writing. The affirmative relief ordered by the district court seems most likely to result in a further proliferation of baseless suits, rather than achieving the intended effect of providing female inmates with equal and constitutionally necessary access to the courts. However, our review here is limited to a determination of whether the district court abused its discretion in fashioning the instant remedy. Under these facts, I cannot find that the district court abused its discretion. Accordingly, I concur.
 
 
 20
 Ralph B. GUY, Jr., Circuit Judge, dissenting.
 
 
 21
 The district court found that the provision of attorney assistance at KWIC was essential "to establish equality of access among the female and male inmate populations." Canterino v. Wilson, 644 F.Supp. 738, 741 (W.D.Ky.1986). Plaintiffs argue on appeal, and the court below agreed, that female inmates have been denied equal protection of the laws because "[h]istorically, women inmates have not gained the experience of their male counterparts in providing legal assistance to other inmates as 'writ-writers' or 'jailhouse lawyers' because of the unavailability for many years of sufficient legal resources." Canterino v. Wilson, 562 F.Supp. 106, 112 (W.D.Ky.1983). As additional support for its finding of an equal protection violation, the district court noted that:
 
 
 22
 "KSP [Kentucky men's maximum security prison] has three full-time [OPA] attorneys serving around 900 inmates," or one attorney hour per about seven inmates per week. "KSR [Kentucky men's medium security prison] has two full-time attorneys and one part-time, serving 1500 inmates a total of 96 attorney hours per week," or about one attorney hour per fifteen inmates per week. There are about 150 women inmates incarcerated at KCIW. The state offered no basis for providing the women at KCIW with only one attorney hour per 150 inmates per week.
 
 
 23
 562 F.Supp. at 111 (citations omitted).
 
 
 24
 As I understand the court's rationale, it found that the women inmates had been denied meaningful access because they had not been provided with the same access as the male inmates. This rationale does not withstand scrutiny. Initially, in order to establish an equal protection violation, plaintiffs must show that the state intentionally discriminated against women prisoners as a group for no legitimate reason. It is undisputed that, prior to the consent decree entered in the men's prison case in 1981, the law libraries at both KSR and KSP were also "woefully inadequate." Therefore, at most, the male inmates enjoyed the benefit of a constitutionally adequate library for two years longer than female inmates at KCIW. Furthermore, as the court pointed out, in 1982, the Kentucky prison system housed a minimum of 2400 male prisoners and only 150 female inmates. Undoubtedly it is an historical fact that, due to the extremely disproportionate number of male inmates, the men have, by virtue of longer and more varied experience, acquired a greater level of expertise in meeting their own legal needs. I glean from this fact no evidence of any intentional discrimination against women as a class by the state. Indeed, it appears that the OPA, which is charged by statute with providing legal assistance to inmates in criminal matters only, regulates its own hours and is not subject to the complete direction of the prison authorities in its choice of the number of hours of legal assistance to provide at any one facility.
 
 
 25
 Plaintiffs attempt to justify the court's "affirmative sex-conscious relief" under the rationale of the Supreme Court's holding in Local 28 Sheet Metal Workers v. EEOC, 478 U.S. 421, 106 S.Ct. 3019 (1986), in which the Court approved the use of race-conscious affirmative relief without requiring that only identifiable victims of past discrimination be benefited. That case is inapposite for two reasons.
 
 
 26
 First, courts faced with evidence of intentional race or sex discrimination fashion relief in this area under the statutory directive of Title VII and the longstanding and consistent federal policy to eradicate such discrimination in the employment context. Second, the Court found the race-conscious remedy appropriate in that case explicitly because the union's discriminatory practices were particularly longstanding and egregious. 478 U.S. at 476; 106 S.Ct. at 3050.
 
 
 27
 In contrast, this case presents no issue of pervasive discrimination nor any justification for imposing an "affirmative" remedy for past recalcitrance. Our sole question here is whether the state is required, under the fourteenth amendment's equal protection clause, to assist female inmates in achieving the identical level of access as is enjoyed by male inmates, even though male inmates' access may be characterized as "more meaningful" than is constitutionally required. I would answer that question in the negative and reverse.
 
 
 
 *
 The Honorable Richard Suhrheinrich, United States District Judge for the Eastern District of Michigan, sitting by designation