**Dennis M. GALLIPEAU, Plaintiff,**

v.

**James BERARD and Ronald Brodeur, in their individual capacities, Defendants.**

**No. C.A. 88–0562 L.**

United States District Court, D. Rhode Island.

March 30, 1990.

---

Dennis M. Gallipeau, Barrington, R.I., pro se.

Anthony Cipriano, Deputy Chief, R.I. Dept. of Corrections, Cranston, R.I., for defendants.

## MEMORANDUM AND ORDER

LAGUEUX, District Judge.

This matter is before the Court on defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Dennis M. Gallipeau, a former inmate at the Adult Correctional Institutions (ACI), filed this 42 U.S.C. § 1983 civil rights action, while still an inmate, against a host of prison officials in their official and personal capacities. Plaintiff claimed that these officials seized legal papers from his cell and that they deprived him of his constitutional right to access the courts and his right to provide legal assistance to other inmates. Over the course of the pendancy of this case, plaintiff has voluntarily withdrawn his claims against all defendants except James Berard, former Associate Director of the Maximum Security facility at the ACI, and Ronald Brodeur, a Correctional Officer Captain at that facility. Plaintiff also withdrew his official capacity suit against Berard and Brodeur, presently suing them only in their individual capacities.

Defendants, in support of their motion for summary judgment, argue that *Will v. Michigan*, ── U.S. ──, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), bars plaintiff's action because his suit in effect challenges their official conduct. Defendants also argue that plaintiff has no right to act as a jailhouse lawyer. Plaintiff counters defendants' *Will* defense, by arguing that he is really suing them in their individual capacities for acts which exceeded the bounds of their employment authority.

## BACKGROUND

At all times relevant to this lawsuit, plaintiff was incarcerated in the Maximum Security unit at the ACI. During portions of his incarceration, he was employed as an inmate law clerk in the law library. While so employed, he assisted other inmates with their legal problems and engaged in his own legal affairs. On December 26,

1986, and again on August 14, 1987, defendant Brodeur, apparently acting under the authority of defendant Berard, confiscated legal papers from plaintiff's cell. Plaintiff alleges that Brodeur told him on these occasions that he was seizing the materials to teach him a lesson for his work as a jailhouse lawyer. Brodeur filed disciplinary proceedings against plaintiff claiming that his unauthorized possession of legal materials relating to other inmates violated prison rules. The Disciplinary Board, however, found plaintiff not guilty of any infractions, concluding that the legal materials did not constitute contraband. On August 15, 1987, Brodeur seized from plaintiff three affidavits belonging to other inmates. Finally, on February 26, 1988, a correctional officer, acting pursuant to defendant Berard's orders, confiscated what legal papers Gallipeau had remaining in his cell.

The complaint alleges that the conduct of Brodeur and Berard resulted in the seizure of plaintiff's own *pro se* work as well as legal research he had conducted on behalf of other inmates. Plaintiff alleges that, in some instances, the officers returned portions of the impounded papers while at other times, they failed to return any materials at all. Plaintiff contends that Brodeur and Berard sought to retaliate against him for helping other inmates file litigation which incriminated defendants. Plaintiff further claims that defendants "conspired to deprive plaintiff of a constitutionally protected right and were reasonably orchestrating an artfully planned and exercised battery of punishment, harassment, and retaliation against plaintiff aimed at deterring plaintiff's legal activities." Plaintiff's complaint ¶ 35. He claims that defendants have intentionally and unreasonably obstructed his right of access to the courts. Plaintiff charges defendants with violations of the Privileges and Immunities clause of Article IV, § 2, cl. 1 of the United States Constitution and with interference with plaintiff's first, eighth and fourteenth amendment rights.

Defendants, in support of their motion for summary judgment, contend that plaintiff has failed to show that defendants' acts were "non-official, private or individual in nature." They conclude that *Will v. Michigan, supra*, therefore, bars maintenance of the action. Defendants alternatively argue that *Will* applies because they acted at all times within the scope of their employment. Defendants contend that they searched plaintiff's cell, in the interest of prison security, on information that he was distributing a petition which urged inmates to join a protest action. Defendants indicate that their search for the petition uncovered legal paperwork which pertained to other inmates. Reasoning that prison regulations precluded inmates from maintaining other prisoners' legal work in their jail cells, defendants insist that they were acting within their authority when they confiscated the materials.

After having heard oral arguments, this Court took the matter under advisement. It is now in order for decision. The Court will address the two issues raised by defendants' motion. First, whether *Will v. Michigan, supra*, precludes plaintiff's § 1983 suit against Berard and Brodeur because the alleged constitutional violations occurred while they acted within the course of their employment. Second, whether plaintiff has sufficiently shown that the defendants' conduct frustrated his right of access to the courts.

## DISCUSSION

I. Standard for summary judgment motion.

This Court cannot grant a motion for summary judgment under Rule 56 unless no genuine issues of material fact exist. "A genuine issue involves a real dispute, substantiated by evidence beyond the allegations of the complaint, which a judge or jury must resolve. Any fact which affects the outcome of the suit is deemed material. The court must look at the record in the light most favorable to the non-moving party, and must indulge all inferences favorable to that party." *Ryan, Klimek, Ryan Partnership v. Royal Ins. Co. of America*, 728 F.Supp. 862, 866 (D.R.I.1990) (citations omitted). The moving party will not prevail unless it appears that the parties do

not dispute any facts which could affect the litigation's outcome.

## II. Individual versus official capacity suits.

The United States Supreme Court has held that state officials sued in their official capacities do not constitute "persons" within the language of 42 U.S.C. § 1983. *Will v. Michigan, supra,* —— U.S. ——, 109 S.Ct. at 2312. The Court considered a suit against a state official in his or her official capacity the equivalent of a suit against the state itself. *Id.* at 2311. The Court concluded that, absent any congressional intent to override states' immunity, the eleventh amendment bars § 1983 suits against state employees in their official capacity. *See id.* at 2309–10. The Court specified that "[c]onstruing § 1983 as a remedy for 'official violation of federally protected rights' does no more than confirm that the section is directed against state action—action 'under color of' state law. It does not suggest that the State itself was a person that Congress intended to be subject to liability." *Id.* at 2310.

Although clear that *Will* bars § 1983 suits against state officials in their official capacities, the distinction between what constitutes an official capacity as opposed to an individual capacity suit remains ambiguous. Courts must consider whether the plaintiff is truly suing the state—naming the state actor only as an agent or representative of the state—or whether the alleged violation resulted from specific acts or decisions of the named official. "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 3104, 87 L.Ed.2d 114 (1985) (citations omitted).

██ Official capacity suits do not, as defendants here suggest, encompass every suit involving acts performed during the course of a state actor's employment. De-

fendants have confused "during the course of employment" with "within the scope of employment." Courts must analyze whether the complaint alleges that the state official "acted either outside the scope of his respective office or, if within the scope, acted in an arbitrary manner, grossly abusing the lawful powers of office." *Scheuer v. Rhodes,* 416 U.S. 232, 235, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *see also Jones v. State of Rhode Island,* 724 F.Supp. 25, 29 (D.R.I.1989). A negative response to both inquiries would implicate *Will* and bar a suit. Applying this analysis in *Jones,* this Court dismissed the State of Rhode Island, the Director of Mental Health, the Administrator of the Institute of Mental Health, and the General Treasurer of the State of Rhode Island as parties to a § 1983 suit. *Id.* at 26–27, 28. This Court allowed the suit to be maintained against the individual employees of the Institute of Mental Health alleged to have acted outside the scope of their employment when they allegedly willfully, knowingly, and purposefully deprived the plaintiff's decedent of his life. *Id.* at 29.

██ In the present case, there is a factual dispute on this very fundamental issue, i.e., whether defendants were acting within the bounds of their authority as correctional officers when they confiscated legal papers from plaintiff's cell. Although defendants claim that they confiscated the papers in an attempt to uncover and squash a petition which incited a protest against the prison, this rationale applies in only one of four occasions on which defendants allegedly seized materials. With respect to the other three episodes, the scope of authority issue depends on the resolution of another disputed fact—whether a prison regulation existed which precluded plaintiff from possessing the legal papers of other inmates in his cell.

Plaintiff, further, raises questions concerning defendants' motivation. He asserts, by affidavit, that some of the material seized by defendants applied to lawsuits filed by himself, on behalf of other inmates, against Brodeur and Berard. He claims that this prompted defendants to

search and to seize his legal files. Such a self preservation motivation, if true, would amount to an abuse of defendants' authority and would, thereby, take this action beyond the scope of the correctional officers' employment. These material factual disputes preclude granting defendants' motion for summary judgment on the basis of *Will v. Michigan.*

### III. Right of access to courts.

Brodeur and Berard argue that plaintiff has failed to show that their conduct deprived him of a constitutionally or federally protected right. This Court must decide whether, as plaintiff has claimed, the confiscation by defendants of the legal papers contained in plaintiff's cell frustrated his personal right of access to the courts, or his right to assist other inmates gain access to the courts, or both.

The United States Supreme Court has recognized the right of prisoners to freely access courts by holding that state officials could not bar a prisoner from filing a habeas corpus petition with the court. *Ex parte Hull,* 312 U.S. 546, 549, 61 S.Ct. 640, 641, 85 L.Ed. 1034, *reh'g denied,* 312 U.S. 716, 61 S.Ct. 823, 85 L.Ed. 1146 (1941). Since that time, the Supreme Court has concluded that states must supply some form of legal assistance to assure prisoners a *meaningful* access to the courts. *See Ross v. Moffitt,* 417 U.S. 600, 611, 612, 615, 94 S.Ct. 2437, 2444, 2445, 2446, 41 L.Ed.2d 341 (1974). What constitutes meaningful access to the courts is a question involved in a considerable amount of litigation and continues to require decision on a case by case basis.

### A. Right to be a "jailhouse lawyer"

■ In *Johnson v. Avery,* 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969), the United States Supreme Court found that a ban on jailhouse lawyering effectively prevented illiterate or uneducated prisoners from obtaining the assistance necessary to gain entry to the courts. *Id.* at 490, 89 S.Ct. at 751. The Court held that "until the State provides some reasonable alternative to assist inmates in the preparation of petitions for post-conviction relief, it may not validly enforce a regulation ... barring inmates from furnishing such assistance to other prisoners." *Id.* The Supreme Court, in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), extended *Avery* to civil rights actions. *Id.* at 579, 94 S.Ct. at 2986. This right to receive legal assistance from a fellow inmate has also been interpreted as the right to give legal assistance. *See Wilson v. Iowa,* 636 F.2d 1166, 1167 (8th Cir.1981); *Young v. Calhoun,* 656 F.Supp. 970, 973 (S.D.N.Y.1987).

More recently the Supreme Court has recognized and encouraged new methods of providing prisoners with meaningful access to the courts. *Bounds v. Smith,* 430 U.S. 817, 828–29, 97 S.Ct. 1491, 1498–99, 52 L.Ed.2d 72 (1977). The Supreme Court held in *Bounds* that, by providing inmates with either law libraries or the assistance of persons trained in the law, states meet the constitutional guidelines. *Id.* at 828, 97 S.Ct. at 1498. Since *Bounds,* courts have generally upheld the right to the assistance of jailhouse lawyers only when alternative means of assistance were not available. *See Buise v. Hudkins,* 584 F.2d 223, 227–28 (7th Cir.1978), *cert. denied,* 440 U.S. 916, 99 S.Ct. 1234, 59 L.Ed.2d 466 (1979); *Young v. Calhoun, supra,* 656 F.Supp. at 972–73; *Wetmore v. Fields,* 458 F.Supp. 1131, 1142–43 (W.D.Wis.1978). Courts have identified the assistance of law students, public defenders, or inmate law clerks as excellent alternatives to jailhouse writ writers. *See Bounds, supra,* 430 U.S. at 831, 97 S.Ct. at 1499 (such alternatives avoid the disciplinary problems associated with writ writers); *Souza v. Travisono,* 368 F.Supp. 959, 967 n. 8, 969 (D.R.I.1973), *aff'd,* 498 F.2d 1120 (1st Cir.1974); *Gilmore v. Lynch,* 319 F.Supp. 105, 110–11 (N.D.Cal.1970), *aff'd sub nom. Younger v. Gilmore,* 404 U.S. 15, 92 S.Ct. 250, 30 L.Ed.2d 142 (1971).

The First Circuit has interpreted *Bounds* to mean that "[a]n inmate in prison has a constitutional right of access to the courts through 'adequate law libraries *or* adequate assistance from persons trained in the law,' *not both.*" *Blake v. Berman,* 877

F.2d 145, 146 (1st Cir.1989) (emphasis added); *Dupont v. Saunders*, 800 F.2d 8, 10 (1st Cir.1986); *Cepulonis v. Fair*, 732 F.2d 1, 6 (1st Cir.1984). Under this alternative approach, inmates have no entitlement to legal assistance of any sort, whether from a fellow inmate or from someone more versed in the law, provided the state has furnished inmates with adequate access to a law library. *Cepulonis*, 732 F.2d at 6. This Court stated in *Dooley v. Quick*, 598 F.Supp. 607 (D.R.I.1984), *aff'd*, 787 F.2d 579 (1st Cir.1986), "[n]o prisoner is entitled to a cafeteria-style right of selection of a jailhouse lawyer suited to his individual taste. While prisoners may be entitled in certain circumstances to inmate legal assistance, they cannot requisition the services of particular writ-writers." *Id.* at 620 (citations omitted). Finally, the First Circuit recommended that unless clearly in violation of *Bounds*, the district courts should leave the state officials to devise plans for legal assistance. *Cepulonis, supra*, 732 F.2d at 6.

By providing a law library and the assistance of inmate law clerks at the ACI, the State of Rhode Island has exceeded the requisites set out by the First Circuit's interpretation of *Bounds*. Beyond the inmate assistance already provided at the ACI, the inmates do not have a right to receive the assistance of an independent jailhouse attorney. Since this Court cannot conclude, on the undisputed facts, that the ACI inmates have a general right to receive legal assistance from fellow inmates, it must follow that plaintiff here does not have a protected right to give legal assistance to other inmates. In light of this, the Court determines that plaintiff in this case cannot claim that defendants violated his constitutional right to provide legal assistance to his fellow inmates.

### B. Right to maintain legal papers in jail cell

█ The First Circuit has recognized a cause of action against prison officials who confiscated a prisoner's legal papers. *Simmons v. Dickhaut*, 804 F.2d 182, 183–84 (1st Cir.1986). The court found that this conduct frustrated the prisoner's access to the courts. *Id.* Generally, however, this cause of action arises only when the prisoner is deprived of his or her own legal papers. *See DeWitt v. Pail*, 366 F.2d 682, 686 (9th Cir.1966). If the officers cause more than a slight or temporary deprivation of the prisoner's court papers, it is immaterial whether or not the officers acted pursuant to prison rules. *See id.; see also Vigliotto v. Terry*, 865 F.2d 1131, 1133, *amended*, 873 F.2d 1201, 1203 (9th Cir.1989) (no cause of action where officials deprived prisoner of material for three days); *Holloway v. Dobbs*, 715 F.2d 390, 392 (8th Cir.1983) (court dismissed claim where materials were eventually returned to inmate). Plaintiff's affidavit states that in some instances, defendants never returned the confiscated material. Although plaintiff fails to indicate clearly whether the alleged permanent takings deprived him of his own personal legal materials or the materials of his fellow inmates, this Court must read plaintiff's *pro se* filings indulgently. *See Simmons v. Dickhaut, supra*, 804 F.2d at 184. Therefore, the Court concludes that plaintiff has made a sufficient showing that there are disputed issues of fact here that raise a question of whether defendants frustrated his personal access to the courts.

### CONCLUSION

Defendants' motion for summary judgment on the basis of *Will v. Michigan* is denied. The motion also is denied insofar as plaintiff has alleged a constitutional claim against the defendants for frustrating his right to access the courts. However, defendants' motion, as it relates to plaintiff's claim that defendants interfered with his right to provide legal assistance to his fellow inmates, is granted.

*It is so Ordered.*