Robert BOULIES, Plaintiff,

v.

James G. RICKETTS and Warren Diesslin, Defendants.

Civ. A. No. 81–K–451.

United States District Court, D. Colorado.

July 23, 1981.

Robert Boulies, pro se.

Tarquin J. Bromley, Asst. Atty. Gen., Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

This case is brought under the Civil Rights Act, 42 U.S.C. § 1983; jurisdiction is under 28 U.S.C. § 1343. Plaintiff is an inmate at the Buena Vista Correctional Facility. Defendants are the Superintendent of the Facility and the Director of the Colorado Department of Corrections. Plaintiff's amended complaint alleges three causes of action. Count I alleges that plaintiff's right of access to the courts is being denied because the facility's law library is inadequate. Count II alleges that the law library's congested and cramped work area and lack of trained personnel deny plaintiff his constitutional rights. Count III alleges that defendant Diesslin called plaintiff a "troublemaker" for filing this action and threatened to have plaintiff transferred to the maximum-security institution at Canon City.

Defendants moved to dismiss all three counts and moved alternatively for summary judgment. Briefs and affidavits have been filed and the motion is now ripe for determination. I deny defendants' motions with respect to Counts I and II and grant defendants' motion for summary judgment on Count III.

## I  ACCESS TO THE COURTS

"It is now settled beyond doubt that prisoners have a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed.2d 72 (1977). With habeas corpus and civil rights claims it is essential that the claimant know some of the details of the applicable law in order to avoid having a meritorious claim dismissed as frivolous. *See id.* at 825–27. A state has several options in providing prisoners adequate court access. *Ramos v. Lamm*, 485 F.Supp. 122, 165–67 (D.Colo. 1979), *aff'd in part, vacated in part*, 639 F.2d 559 (10th Cir. 1980) (affirming *this point*), *cert. denied*, —— U.S. ——, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981). It may utilize its public defender system, it may contract with an agency, foundation or law school, or it may provide a prison law library and inmate assistance. *Id.*

Usually it is more expensive and time consuming for a state to maintain a constitutionally adequate law library than to provide another form of court access. *Id.* Inmates untrained in the law may also receive lower quality legal representation by using law libraries than they would if trained lawyers or law students were to assist them. Likewise, state officials and their counsel have increased costs and time expended when defending *pro se* cases. In addition, prison law libraries give a few "jailhouse lawyer" inmates the opportunity to practice favoritism, bribery, and physical abuse upon illiterate and ignorant prisoners desiring legal assistance. *See Henderson v. Ricketts*, 499 F.Supp. 1066 (D.Colo.1980). Because of the inadequacies of the prison law library approach, one judge has suggested that more innovation is needed in providing inmates with effective court access. *Battle v. Anderson*, 614 F.2d 251, 259 (10th Cir. 1980) (Doyle, J., concurring). The Supreme Court has noted several alternatives that are superior to prison law libraries. Referring to the various professional or quasi-professional inmate legal assistance programs that nearly half of the states provide, the court stated:

> Legal services plans not only result in more efficient and skillful handling of prisoner cases, but also avoid the disciplinary problems associated with writ writers. Independent legal advisors can mediate or resolve administratively many prisoner complaints that would otherwise burden the courts, and can convince inmates that other grievances against the prison or the legal system are ill-founded, thereby facilitating rehabilitation by assuring the inmate that he has not been treated fairly. It has been estimated that as few as 500 full-time lawyers would be needed to serve the legal needs of the entire national prison population. Nevertheless, a legal access program need not include any particular element we have discussed, and we encourage local experimentation.

*Bounds v. Smith*, 430 U.S. at 831–32, 97 S.Ct. at 1500 (citations omitted). Whether by design or inadvertence, Colorado uses the law-library approach for Buena Vista inmates.[1] I must therefore scrutinize the Buena Vista facility's law library and inmate assistance program to determine whether they provide constitutionally adequate court access to the inmates.[2]

---

1. Although defendants argue that prison regulations governing procedures for inmate-attorney contacts provide inmates with adequate court access, defendants do not specify any mechanism that provides legal assistance to inmates who do not already have attorneys. Because there is no allegation that plaintiff currently has an attorney, defendants must rely on the adequacy of the Buena Vista facility's law library in challenging Count I of the complaint.

2. Defendants argue that plaintiff must demonstrate that the allegedly inadequate law library has caused him actual harm in order to state a § 1983 claim, citing *Twyman v. Crisp*, 584 F.2d 352, 357 (10th Cir. 1978). This citation is inap-

Count I of the complaint alleges that the Buena Vista facility's law library is constitutionally inadequate because it lacks many essential volumes. In their motion to dismiss, defendants cite certain standards from American Correctional Association, *Manual of STANDARDS for Adult Correctional Institutions.* Standard 4283 provides:

> *Written policy and procedure grant inmates access to legal assistance from individuals with legal training or from law library facilities.* (Essential) DISCUSSION: The constitutional right of access to the courts requires that, when requested, inmates receive assistance in preparing and filing legal papers. This should include assistance from persons with legal training, law school legal assistance programs, the public defender's office or law library facilities. As suggested by state court rulings, the law library should include, at a minimum: state and federal constitutions, state statutes and decisions, procedural rules and decisions and related commentaries, federal case law materials, court rules and practices treatises, legal periodicals and indexes.

(emphasis in original). Defendants then argue that, because the American Correctional Association formally accredited the Buena Vista facility, it must comply with all standards, including Standard 4283. In reading the 55 pages of exhibits submitted to document the exhaustive ACA study I find only one reference to Standard 4283: it was assigned, along with over one hundred other standards, to one committee member for investigation. Nowhere in the exhibits is there any indication that anyone actually inspected the law library, nor did anyone make any findings regarding the law library.

Defendants' Exhibit D inventories the Buena Vista facility's law library materials. The list states that the compilation of state appellate decisions is incomplete; the list does not even include the Federal Reporter or Federal Supplement.[3] Defendants' own exhibits therefore demonstrate that the law library does not meet the minimum requirements of Standard 4283. This collection also is far below minimum standards approved by the American Bar Association and the American Association of Law Libraries. *See Bounds v. Smith,* 430 U.S. at 819 n.4, 97 S.Ct. at 1493 n.4. Because the Buena Vista facility's law library falls below any known acceptable standard, it does not provide inmates with constitutionally acceptable court access. *See Ramos v. Lamm,* 485 F.Supp. at 166. It is simply ludicrous for defendants to argue that they are entitled to summary judgment on Count I.

Count II of the complaint alleges that the law library is constitutionally inadequate because of its cramped conditions and lack of trained personnel. Defendants argue that plaintiff's "reasonably articulate complaint" is conclusive evidence that the law library is in fact adequate. I find this argument unconvincing. Because one inmate was able to file one satisfactory complaint does not mean that the state has provided the inmate with constitutionally acceptable court access.[4]

The inquiry in this case is not whether a certain size of law library is

---

posite. *Twyman* dealt with the amount of time an inmate had to use a law library, not the adequacy of the library. Twyman at worst would only be delayed in filing his papers; plaintiff here may never ascertain his best legal arguments if the library is inadequate. *See Bounds v. Smith,* 430 U.S. at 825, 97 S.Ct. at 1496. I hold that an uncontradicted allegation that the law library is constitutionally inadequate is sufficient in this case to state a cause of action under § 1983. *See Corby v. Conboy,* 457 F.2d 251, 253 (2d Cir. 1972). *See also Ramos v. Lamm,* 639 F.2d at 582–85 (rejecting defendants' similar argument in another case).

3. Plaintiff's reply brief lists further inadequacies in the law library.

4. If defendants' argument were carried to its logical conclusion, the courts would never be able to find that a state had denied inmates their right to court access: all "articulate" complaints would be dismissed because they would conclusively demonstrate that there was adequate court access; inarticulate complaints would have to be dismissed for failure to state a cause of action.

acceptable, but rather whether all of the prison's facilities and rules, taken as a whole, provide inmates with meaningful access to the courts. *See Ramos v. Lamm*, 485 F.Supp. at 166, *aff'd*, 639 F.2d at 582–85. Because neither party has submitted any affidavits that adequately address this question, I deny summary judgment on Count II.

## II  THREATENED RETALIATION

■ Count III of the amended complaint alleges that defendants have threatened to take retaliatory action against plaintiff because he filed this action. Defendants filed affidavits stating that they may have threatened disciplinary actions against plaintiff for violations of prison regulations. The affidavits state that defendants never threatened retaliation against plaintiff for filing this action. Plaintiff failed to respond to defendants' motion for summary judgment on Count III within the 20 days allowed by Local Rule of Practice 4(d). Based on defendants' uncontroverted affidavits, I grant summary judgment pursuant to F.R.Civ.P. 56(e) on Count III. Should acts occur after the date of the complaint, plaintiff may amend. It is

ORDERED that defendants' motions to dismiss and for summary judgment are denied with respect to Counts I and II. It is further

ORDERED that defendants' motion for summary judgment on Count III is granted. Count III of this civil action is hereby dismissed. It is further

ORDERED that defendants shall answer Counts I and II within ten days of the date of this Order.