LaCarttle JONES, Fred Lauriano, Paul W. Tedder, Alvin F. Toney-El, Plaintiffs-Appellees,

v.

Gayle M. FRANZEN, James W. Fairman, and Captain Hosie, Defendants-Appellants.

No. 82–1071.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 29, 1982.

Decided Jan. 18, 1983.

Suzan Sutherland, Asst. Atty. Gen., Springfield, Ill., for defendants-appellants.

Kaarina Salovaara, Jenner & Block, Chicago, Ill., for plaintiffs-appellees.

Before CUMMINGS, Chief Judge, POSNER, Circuit Judge, and SWYGERT, Senior Circuit Judge.

POSNER, Circuit Judge.

This is an appeal from the grant of a preliminary injunction in favor of inmates at the state prison in Pontiac, Illinois. The issue is the right of prisoners to copy documents for use in litigation.

In September 1979 LaCarttle Jones filed a pro se suit under 42 U.S.C. § 1983 alleging that the conditions of his imprisonment constituted cruel and unusual punishment. In October the defendants moved that Jones be ordered "to furnish them, forthwith, copies of all exhibits filed in the instant matter." This motion precipitated the controversy over copying, for Jones replied to the state's motion with a charge that the defendants had "refused to let plaintiff have photostat copies maded of documents, in which plaintiff wish to send to court," and later he amended his complaint to add a charge that the alleged refusal violated section 1983. Jones also requested a preliminary injunction, and on March 26, 1980, the judge issued to the defendants a rule to show cause why they should not be enjoined from refusing to make photocopies that Jones needed to prosecute his original 1983 suit.

The defendants responded by submitting an affidavit of the prison librarian in which he explained that he was in charge of copying, that he had already copied some 800 pages of documents for Jones, that on one occasion Jones wouldn't let the papers he wanted copied out of his sight but asked that he be allowed to accompany them to the library where the copying machine was located, that this was against regulations since Jones was in disciplinary segregation, but that, "As I recall, Jones was escorted to the library the following week." The librarian explained that the "library photocopy policy requires that copying be done directly related to access to the grievance system or to the legal system. A great deal of latitude is granted to residents and most requests for photocopying are immediately granted. Where papers appear to be improperly prepared for submission to court, or where there is an obvious doubt about the relationship of the request to obtaining access to the court, the problem is explained to the law clerk and he is assigned to return the papers to the segregation resident and

attempt to clear up the problem. These problems cannot always be settled to the satisfaction of the resident, especially if the resident has a poor understanding of what is required. I assume some papers have been returned to Jones for clarification on their relationship to access to the courts. He has offered no specifics on which I can comment." ("Resident" is a euphemism for inmate; a "law clerk" is an inmate who assists other inmates with their legal problems, i.e., a "jailhouse lawyer.")

Jones replied to the librarian's affidavit by charging that it "grossly falsif[ied] the number of photostatic copies requested by plaintiff." The defendants' riposte was to file an affidavit of Jones himself stating that "as of this date, April 18, 1980, I do not have any documents to be photocopied."

The district judge appointed counsel for Jones and a hearing on Jones' motion for preliminary injunction was held at the end of April at which the judge requested further particulars on the prison's copying policy. On May 20 the defendants submitted a copy of the written "Library Photocopy Policy" to which the librarian had referred. It contains the statement: "All materials photocopied shall be examined and approved by the librarian as being valid and needed within limits of the library program." On June 5 the judge declared the photocopy policy "vague and unacceptable," and directed the defendants to submit a new one. The defendants did so, but the judge was unsatisfied. After a good deal of back and forth, the judge on December 9, 1981, issued an injunction against enforcement of the existing photocopy policy, from which the defendants appeal. Three other prisoners' challenges to the photocopy policy were consolidated with Jones' and are before us on this appeal but there is nothing in the record on the details of these challenges.

■ Jones cannot prevail under 42 U.S.C. § 1983 without showing that the state has deprived him of life, liberty, or property without due process of law; and broad as the constitutional concept of liberty is, it does not include the right to xerox. To make out a claim under section 1983 based on denial of copying privileges Jones has to show that the denial prevented him from exercising his constitutional right of access to the courts. See *Johnson v. Parke,* 642 F.2d 377 (10th Cir.1981) (per curiam); *Bounds v. Smith,* 430 U.S. 817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed.2d 72 (1977). The reasonableness of a prison's photocopy policy becomes relevant only after the prisoner has shown that the policy is impeding that access, for if it is unreasonable but not impeding he has not made out a prima facie case of violation of his constitutional rights.

■ The only interpretation we can place on Jones' affidavit of April 18 is that whatever difficulties—probably minor, judging from the librarian's affidavit of April 1— Jones may have experienced in getting his documents copied had been cleared up by April 18, 1980; he no longer had any backlog of documents that he wanted, but had been unable to get, copied. Since then, so far as we can tell from the record, Jones has had no difficulty at all getting his documents copied. Of course, there have been changes in the prison's copying policy during this period; and maybe the defendants are bending over backwards to comply with his copying requests in order to make this case seem moot—but this is rank speculation, not even suggested by the plaintiffs.

It would hardly be surprising if there had initially been some difficulty in satisfying Jones' requests for copying. Although Jones denied that the prison library had copied 800 pages of documents for him, it seems likely that his demands simply overwhelmed the library staff, for he is a most persistent litigant. The allegations that he made in the district court that are unrelated to copying concern his assignment to a double cell, his being placed in disciplinary segregation for refusing to accept a cellmate, and the "Nazism tactics" used by the prison authorities to get him to accept one; their refusing to transfer him to a minimum security prison so that he could continue his education; their confiscation of his false teeth and interference with his shaving; their failure to treat his peptic ulcers, nervous conditions, paranoid tenden-

cies, and "depress tendencies"; their refusal to let him buy "head cleaners" for his 8-track tape player and to supply him with a laundry bucket and with cable television; their forcing him to undergo a psychiatric examination; their confiscation of his "engineer's ruler" and his "audio and visual equipment," and storage of that equipment in a place where it might rust. Without meaning to disparage or prejudice these claims, which are not before us on this appeal, we think his complaint about copying is more likely to have reflected some transient misunderstanding with prison officials than a deliberate and actionable denial by them of access to the courts. He seems to have very free access to the federal district court and to be exploiting it to the hilt.

In any event, the copying controversy appears to have ended some 20 months before the district court issued the injunction under appeal. The grant of the injunction harmed the defendants by forcing them to change their copying regulations but the denial of the injunction would not have harmed Jones because the defendants were no longer, if, as we doubt, they ever had been, improperly impeding his access to the courts. The balance of hardships alone made the issuance of a preliminary injunction inappropriate. See *Fox Valley Harvestore, Inc. v. A.O. Smith Harvestore Products, Inc.*, 545 F.2d 1096, 1097 n. 1, 1098 (7th Cir.1976); *Omega Satellite Products Co. v. City of Indianapolis*, 694 F.2d 119, 123 (7th Cir.1982).

Moreover, Jones did not have a good chance of eventually succeeding on the merits and obtaining a permanent injunction. In *Gibson v. McEvers*, 631 F.2d 95 (7th Cir.1980), decided more than a year before the district court issued the injunction in this case, we upheld the identical library photocopy policy that was in force at Pontiac in April 1980. The case was from another Illinois state prison, but the photocopying policy is statewide. We described the regulation as "clearly reasonable" and pointed out that "the record discloses that many, if not all, of plaintiff's documents were photocopied and that others would have been if

he left them with the librarian. Since there was no showing that plaintiff was denied access to the courts by virtue of this regulation, summary judgment was justified." *Id.* at 98. That sounds just like this case. Of course, a full trial might reveal that the regulation was applied to deny Jones his right of access to the courts, whatever now appear to be the facts. But this is unlikely in light of Jones' affidavit of April 18 and his silence thereafter. And there is no evidence that his co-plaintiffs were denied access to the courts. The district court exceeded its power in issuing a preliminary injunction to a plaintiff who, though by this time represented by counsel, was unable to show either a substantial likelihood of prevailing at trial or irreparable injury from denial of the injunction.

We have assumed thus far that what the district judge issued was a preliminary injunction, because that is what Jones asked for. But the judge himself did not denominate the injunction as temporary or permanent, and there is no indication that a trial has been scheduled to determine whether a permanent injunction should be issued. Maybe, then, the injunction under review is a permanent injunction. But that would not help the plaintiffs. On the basis of the record before us, we have to conclude that the plaintiffs have failed to carry their burden of proving that the defendants impeded their access to the courts. And without such proof, as we have said, the issue of the reasonableness of the challenged copying policy is not even before us. Whatever the injunction was, therefore—and this issue can be straightened out on remand—it should not have been issued.

REVERSED.