**Albert J. BLAKE, Plaintiff, Appellant,**

v.

**Louis M. BERMAN, et al.,
Defendants, Appellees.**

No. 88–1545.

United States Court of Appeals,
First Circuit.

Heard Jan. 11, 1989.

Decided June 12, 1989.

William Hewig III with whom Gaston & Snow, Boston, Mass., was on brief, for plaintiff, appellant.

Andrew M. Zaikis, Asst. Atty. Gen., Criminal Bureau, with whom James M. Shannon, Atty. Gen., Boston, Mass., was on brief, for defendants, appellees.

Before COFFIN and BREYER,
Circuit Judges, and PETTINE,* Senior
District Judge.

BREYER, Circuit Judge.

The appellant, Albert Blake, a prisoner in the Massachusetts state prison system, sued the Commissioner and the Acting Commissioner of Corrections under 42 U.S.C. §§ 1983 and 1985, claiming that they had deprived him of his constitutional right of "access to the courts." *See Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). A jury found that the defendants had not done so, stating specifically (in response to questions) that neither defendant had "denied" the plaintiff "access to the courts" and that, in any event, they had not "caused" the plaintiff "injury." Blake appeals, solely on the ground that the evidence so strongly favored his claim that the district court ought to have directed a verdict, or granted a judgment notwithstanding the verdict, in his favor. We have reviewed the evidence, keeping in mind that "we must uphold the jury's verdict unless the evidence and accompanying inferences 'point so strongly and overwhelmingly in favor of the movant that a reasonable jury could not have arrived at

---

* Of the District of Rhode Island, sitting by desig-      nation.

[the] conclusion' actually reached." *Ins. Co. of North America v. Musa,* 785 F.2d 370, 372 (1st Cir.1986) (citation omitted); *accord Dopico–Fernandez v. Grand Union Supermarket,* 841 F.2d 11, 12 (1st Cir. 1988). We conclude that the record evidence adequately supports the jury's determination.

We take as given the following background facts: (1) In 1976 Blake began to serve a long prison term (for the state-law crime of armed robbery) at Walpole prison in Massachusetts. (2) In 1980, for reasons not directly relevant here, Massachusetts transferred Blake to a federal penitentiary in Leavenworth, Kansas. (3) During his stay at Leavenworth, Blake wished to bring legal actions in the Massachusetts courts concerning the conviction for which he was serving time and the good-time credits he felt were due him. (4) In late 1982 Blake was returned to Massachusetts to continue serving his sentence. (5) The law libraries to which prisoners at Leavenworth have direct access do not possess adequate sets of Massachusetts legal materials. (6) Prisoners at Leavenworth, including Blake, have access to the Kansas Defender Project ("KDP"), a clinical program of the University of Kansas School of Law, which provides them with legal assistance.

■ We also take the basic legal standard governing this appeal to be the standard set forth by the Supreme Court in *Bounds v. Smith, supra,* and by this court in *Cepulonis v. Fair,* 732 F.2d 1 (1st Cir. 1984): An inmate in prison has a constitutional right of access to the courts through "'adequate law libraries *or* adequate assistance from persons trained in the law,' not both." *Cepulonis,* 732 F.2d at 6 (emphasis in original) (quoting *Bounds,* 430 U.S. at 828, 97 S.Ct. at 1498).

With this background, one can understand why we find two independent bases for upholding the verdict. First, the jury might have found that Blake had "adequate assistance from persons trained in the law" in the form of access to the Kansas Defender Project. The record permits the jury to conclude that the KDP, through the use of law students, teachers, and law-yers, would provide inmates with legal counseling and representation and that (as KDP's director testified) it would "attempt to assist all inmates who had legally remedial [sic] claims and were otherwise unable to get counsel." Tr. at 2–40. Blake was aware of this program, contacted it seeking assistance, and (the jury might have found) was denied assistance only because he did not specify the nature of his legal problem.

Blake argues that the KDP was constitutionally inadequate because it used a "screening process," agreeing to assist with only some complaints while declining others. The law, however, does not forbid "screening," nor does case law hold, or suggest, that the presence of "screening" automatically transforms a constitutionally adequate program of legal assistance into a program that fails to pass muster. In our view, everything depends upon the *kind* of screening that is at issue. Where, for example, the "screening" at issue consisted of prison authorities' refusal to transmit prisoners' habeas corpus petitions to a court, the Supreme Court, not surprisingly, held that the authorities had interfered with the prisoners' constitutional right of access. *Ex parte Hull,* 312 U.S. 546, 549, 61 S.Ct. 640, 641, 85 L.Ed. 1034 (1941). But where the "screening" consisted of a legal aid organization's decisions about which inmate cases are appropriate for court-appointed counsel, and which for private counsel, the Tenth Circuit found no constitutional deficiency. *Nordgren v. Milliken,* 762 F.2d 851, 855 (10th Cir.1985).

The jury here might have accepted the KDP Director's own characterization of the "screening process," namely "that we would not prepare documents for an inmate that we thought were *frivolous,*" Tr. at 2–41 (emphasis added). This type of screening, in our view, would not automatically make unconstitutional an otherwise adequate program. To the contrary, in *Carter v. Fair,* 786 F.2d 433 (1st Cir.1986), we said that one characteristic of an *adequate* assistance program was that "attorneys in the program do help inmates sort out potentially meritorious claims from those without a foundation." *Id.* at 435.

And Justice Marshall, writing for the Supreme Court in *Bounds*, pointed out that one of the virtues of providing inmates with "independent legal advisors" is that such "advisors," furnished to prisoners as an alternative to law libraries,

> can mediate or resolve administratively many prisoner complaints that would otherwise burden the courts, and can convince inmates that other grievances against the prison or the legal system are ill-founded, thereby facilitating rehabilitation by assuring the inmate that he has not been treated unfairly.

430 U.S. at 831, 97 S.Ct. at 1500 (footnote omitted). To require a prison system, as an alternative to law libraries stocked with the reporters of fifty states and the federal system, to furnish lawyers to help inmates file *frivolous* claims would sometimes place the lawyer in something of an ethical dilemma, *see* Fed.R.Civ.P. 11; ABA Model Rules of Professional Conduct, Rule 3.1 (1983); Cann, *Frivolous Lawsuits—the Lawyer's Duty to Say "No"*, 52 U.Colo.L. Rev. 367 (1981), and would waste scarce legal resources by crowding out those whose claims are not frivolous. As long as those providing legal assistance are properly identifying frivolous cases, we are not perturbed by such "screening." Nothing in the record here suggests that the KDP's determinations about "frivolity" were erroneous or not made in good faith.

Second, and irrespective of our first point, the jury reasonably could have found that any inadequacies in Leavenworth's program caused Blake no harm, for, although he knew that the KDP offered assistance, he did not properly request it. The court instructed the jury, without objection, that Blake must show that he

> attempted to avail himself of the available alternative legal assistance program and was denied assistance.... A prisoner who chooses not to avail himself of the alternatives provided has no basis—constitutional or otherwise—for complaint.

Tr. of Charge to the Jury at 9–10. This instruction is consistent with precedent. *See Carter v. Fair*, 786 F.2d at 435–36

(inmate must show some defect in the assistance he sought); *Corgain v. Miller*, 708 F.2d 1241, 1250 (7th Cir.1983) ("we do not read the Supreme Court's decision in *Bounds* as imposing a duty to provide the appellants with state law libraries in the event that they choose not to accept adequate alternative legal services.").

The record reveals that in August 1981 Blake sent a letter to KDP, which the Assistant Director answered in September 1981, saying that the KDP "is not in a position to supply you with the requested Massachusetts legal materials." He added, however, that he "would be happy to arrange for one of our Project members to interview you concerning you[r] legal problems." The Assistant Director enclosed KDP's application form for Blake to fill out, which Blake returned. Blake testified at trial that

> as to a question [on the application form] asking me or defining what I thought my legal problems were, I told them that I needed Massachusetts law books to gain access to the Massachusetts Court system.

Tr. 43. He conceded that he had been "a little evasive" about "what I thought my legal problems were." *Id.* In February 1982 Blake again wrote to the KDP, asking for "law books" and "copies of case law," and asking whether the Project did "research" on "both post conviction and civil matter[s] prior to a case being filed." He also telephoned the KDP regarding the application form he had filled out. The Assistant Director replied by letter dated February 24, 1982 that the KDP was unable to provide those services. In October 1982 Blake sent the KDP a photocopy of his February 1982 letter, to which the KDP Director responded in November 1982 that "our office is not in a position to send out books on a loan basis," or "to send copies of case law," but that the KDP did do research "upon receiving a request from a Leavenworth inmate." The Director then enclosed for Blake another application form again asking him to explain his legal problem. Blake apparently (or so the jury might reasonably have believed) failed to send back the second form.

In our view, it is perfectly reasonable to ask an inmate requesting legal assistance to set forth the facts that lead him to think he has a legal problem. An inmate need not state a precise cause of action, but he must explain enough about the facts so that a legal aid organization can understand the situation and help him " 'prepare a petition or complaint.' " *Bounds*, 430 U.S. at 828 n. 17, 97 S.Ct. at 1498 n. 17 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 576, 94 S.Ct. 2963, 2984, 41 L.Ed.2d 935 (1974)). Otherwise, how is the organization to "help inmates marshal the facts necessary for presentation in a petition or complaint"? *Carter v. Fair*, 786 F.2d at 435. The organization cannot be expected to decide to devote a portion of its scarce resources, or to furnish meaningful counsel, based solely on the inmate's bald, unexplained assertion of a general need for legal assistance. In this instance, a jury could easily conclude that Blake, who testified that as a prisoner he participated in approximately four hundred legal proceedings, was reasonably experienced in judicial matters and understood that he had to explain the nature of his problem to the KDP before he could expect assistance. And, it could have concluded that he simply failed to satisfy this perfectly reasonable requirement for obtaining assistance.

Hence, the jury could reasonably have concluded either that the KDP program was adequate, as an alternative to a law library; or that Blake never sufficiently availed himself of KDP's services. From either viewpoint, the defendants did not injure Blake through any constitutional deficiency in the institutions through which they provided "adequate access to the courts."

For these reasons, the judgment of the district court is

*Affirmed.*