**Joseph A. MESSERE, Plaintiff,**

v.

**Michael V. FAIR, et al., Defendants.**

**Civ. A. No. 89–1496–WD.**

United States District Court,
D. Massachusetts.

Aug. 8, 1990.

Joseph A. Messere, Somers, Conn., pro se.

David Apfel, Goodwin, Procter & Hoar, Boston, Mass., for plaintiff.

David J. Rentsch, Dept. of Correction, Boston, Mass., Steven Strom, Asst. Atty. Gen., Hartford, Conn., for defendants.

MEMORANDUM AND ORDER

WOODLOCK, District Judge.

Plaintiff Joseph A. Messere brought this civil rights action against officials of the Massachusetts Department of Correction (collectively, the "DOC"), claiming that the DOC violated his civil rights by acts connected with an allegedly retaliatory transfer from MCI–Cedar Junction ("Walpole") to other prisons in Massachusetts and Connecticut. As part of a settlement agreement, the parties stipulated to the dismissal of all but Count XII of the First Amended Complaint. Count XII sets forth allegations that Messere, an inmate and jailhouse lawyer, was denied his constitutional right of access to the courts because he was provided with inadequate legal assistance and law library facilities while incarcerated in Connecticut. Both parties now move for partial summary judgment, seeking a declaration as to liability.

I

On December 28, 1988, the DOC removed Messere from Walpole and placed him in other Massachusetts prisons until June 11, 1989, when he was transferred to the Connecticut Correctional Institution at Somers ("Somers"), pursuant to the New England

Interstate Corrections Compact, St.1962, c.753, § 2. Messere, who has an eighth grade education and is serving a life sentence for second degree murder, remained at Somers until February 8, 1990, when he was transferred back to a Massachusetts prison.

Count XII of the First Amended Complaint alleges that Messere was denied his constitutional right of access to the courts while incarcerated at Somers. During that eight month period, Messere had numerous actions pending in the Massachusetts state courts, including civil rights cases and a motion under Mass.R.Crim.P. 30 for a new trial. He attempted to obtain the assistance of appointed counsel on these matters, but his motions were denied. Thus, Messere was proceeding *pro se* on all pending cases while at Somers.

The Massachusetts Corrections Legal Services, Inc. ("MCLS") rejected Messere's requests for representation and assistance, in part because he was incarcerated out of state and in part because MCLS does not provide aid on appellate work and collateral review of criminal matters. The Legal Assistance to Prisoners Project of the Connecticut Prison Association advised Messere that it could not assist him on his Massachusetts cases.

Somers does offer library services to inmates. However, although the library at Somers has a large number of federal and Connecticut volumes, it does not have any Massachusetts materials. Inmates at Somers may order Massachusetts legal materials from the Connecticut state library; materials of ten pages or less are copied and mailed free of charge, while longer materials are expensed to inmates at a per-page rate unless an inmate is declared indigent.[1] However, inmates must provide the specific volume and page citation of the case, statute, or other material requested; the state library provides no research assistance.

While incarcerated at Somers, Messere informed the DOC that he was receiving neither legal assistance nor access to an adequate law library. He filed this suit in the District of Massachusetts and separate but similar actions in the District of Connecticut.[2] The MCLS also informed the DOC that in its view, neither the Somers law library nor the legal assistance available to Massachusetts inmates there was adequate to meet constitutional requirements. The DOC repeatedly refused to transfer Messere back to Massachusetts—despite requests by Cynthia Morse, Connecticut's Interstate Compact Coordinator—or to provide him with Massachusetts legal sources.

Messere claims that the alleged inadequacy of the legal assistance and library available to him at Somers stalled his Massachusetts civil rights actions and may have caused him to lose the opportunity to obtain further appellate review of the Massachusetts Appeal Court's denial of his Rule 30 motion (and possibly thereby to be precluded from seeking federal habeas corpus relief).

## II

### A. Lack of Access

■ It is firmly established that "prisoners have a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed.2d 72 (1977). The access must be "meaningful," *id.* at 823, 97 S.Ct. at 1495–96, and correctional authorities must provide "prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828, 97 S.Ct. at 1498. In the First Circuit, provision of either an adequate library *or* adequate assistance is necessary. *Blake v. Berman*, 877 F.2d 145, 146 (1st Cir.1989) (citations omitted). Messere alleges that he was provided with nei-

---

1. Messere neither applied for a waiver on the basis of indigency nor made any requests of the state library.

2. Messere's complaints in the District of Connecticut were dismissed after the court found that it was the responsibility of the Massachu-

setts DOC rather than the Connecticut officials charged in the Connecticut actions to provide Messere with meaningful access to the courts. *See Messere v. Meachum et al.*, Civ. Nos. H89–612 & H89–613, slip op. at 3 (D.Conn. September 20, 1989).

ther; in the face of such a claim, "the ultimate burden of proving that the avenues of research and/or legal or paralegal aid [were] adequate rests with the [DOC.]" *Rich v. Zitnay*, 644 F.2d 41, 43 (1st Cir. 1981).

Messere contends that although the library at Somers was adequate to ensure his access to the Connecticut courts, it was not adequate to ensure his access to the Massachusetts courts. It appears beyond dispute that the Somers prison library itself lacks the Massachusetts materials necessary to ensure meaningful access to the Massachusetts courts; however, the DOC argues that the availability of materials from the Connecticut state library by a copying service ensured an adequate law library for Massachusetts inmates at Somers.

Because specific citations are required to access materials from the state library, I find that this copying service fails to satisfy constitutional requirements. It is doubtful that many lawyers and judges could do minimally adequate research if they were required to request materials by mail via specific citations. Requiring prior identification of specific volumes is "suspect," because " '[i]t is unrealistic to expect a prisoner to know in advance exactly what materials he needs to consult.' " *Cepulonis v. Fair*, 732 F.2d 1, 4 (1st Cir.1984) (citation omitted). *See also Rich v. Zitnay*, 644 F.2d 41, 43 (1st Cir.1981) (requiring provision of "precise citations . . . is obviously a Catch 22").

Nor does it appear that Messere was provided with adequate assistance from persons trained in the law. The Connecticut Prison Association declined to assist Messere because it could not work on criminal appeals or on matters involving Massachusetts law. The MCLS refused to provide assistance to Messere while he was out of state, and the Massachusetts courts denied his motions for appointment of counsel. Messere actively sought legal assistance, but fell through the cracks in the system through no fault of his own. His case is thus distinguishable from *Blake v. Berman, supra*, where the prisoner/plaintiff had access to the Kansas Defender Project, but effectively failed to pursue that avenue when he declined to specify for the Project the nature of his legal problem.

Under these circumstances, having given Messere access to neither assistance by persons trained in the law nor adequate Massachusetts legal materials, the DOC cannot be deemed to have provided meaningful access to the Massachusetts courts within the contemplation of *Bounds v. Smith*.

## B. Prejudice

■ The DOC, however, contends that Messere must show more than lack of access. The defendants argue that he must also show he was prejudiced by the lack of access.

The Supreme Court in *Bounds v. Smith* gave no indication that a showing of prejudice is required where the fundamental right of access to the courts has been violated. Nonetheless, some courts have appeared to require prejudice to be demonstrated as an element of a right-to-access claim. For example, in *Langton v. Fair*, Civ. # 87–0430–Z, 1988 WL 55379 (D.Mass. May 23, 1988), Judge Zobel noted that although "the First Circuit has yet to determine whether a showing of prejudice is a necessary element of a successful claim for denial of access to courts," slip op. at 3 (citation omitted),[3] "courts in other circuits have adopted the approach in *Twyman v. Crisp*, 584 F.2d 352 (10th Cir.1978)", *·id.*, which provided that if the plaintiff "could show that he has somehow been prejudiced in any of his various lawsuits, he might perhaps have a legitimate claim." *Twyman v. Crisp*, 584 F.2d at 357.[4]

---

3. *See Cepulonis v. Fair*, 732 F.2d at 5 ("Assuming without deciding that a showing of prejudice is required").

4. In *Langton v. Fair*, despite plaintiff's restricted access to the prison law library, Judge Zobel noted that the plaintiff had filed numerous pleadings, that all his cases remained pending and specifically, that none had been dismissed. Accordingly, she found that the plaintiff-inmate had not been denied access to the courts—as opposed to the library—and entered judgment for the DOC defendants.

The suggestion that actual prejudice is a necessary element of a *Bounds* claim presents significant analytical difficulties. Because of those difficulties, I decline to hold that proof of a violation of the constitutional right of access requires a showing of actual prejudice.

The right of access to the courts is an aspect of due process. "The constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights." *Procunier v. Martinez*, 416 U.S. 396, 419, 94 S.Ct. 1800, 1814, 40 L.Ed.2d 224 (1974). The First Circuit has deemed the right of access a fundamental right derived from various constitutional sources including the due process clause, the privileges and immunities clause, and the First Amendment. *Simmons v. Dickhaut*, 804 F.2d 182, 183 (1st Cir.1986).

█ Claims of violation of the constitutional right of due process, including court access—or other fundamental constitutional rights—do not require proof of actual injury. *Maldonado Santiago v. Velazquez Garcia*, 821 F.2d 822, 829 (1st Cir.1987); *Duffy v. Quattrocchi*, 576 F.Supp. 336, 341 (D.R.I.1983). In the First Amendment context, for example, courts do not ask whether a speaker will be prejudiced because he cannot get his message across, but rather ask simply whether his constitutional right has been infringed. Actual injury is an essential element only in the determination of damages.

As the Supreme Court has explained,

By making the deprivation of [certain "absolute"] rights actionable for nominal damages without proof of actual injury, the law recognizes the importance to organized society that those rights be scrupulously observed; but at the same time, it remains true to the principle that substantial damages should be awarded only to compensate actual injury or, in the case of exemplary or punitive damages, to deter or punish malicious deprivations of rights.... [T]he denial of procedural due process should be actionable for nominal damages without proof of actual injury.

*Carey v. Piphus*, 435 U.S. 247, 266, 98 S.Ct. 1042, 1054, 55 L.Ed.2d 252 (1978) (footnote omitted). I see no principled means to distinguish the fundamental right of access from other fundamental rights. In no such case is a showing of prejudice—or alternatively stated a showing of actual injury—a necessary element for establishing liability.

The cases alluded to by Judge Zobel in *Langton* as suggesting prejudice or quasi-prejudice requirements may be distinguished on their facts. They involved restrictions on the time, place or manner of access to the courts; they did not involve an effective blockade of the avenues of access. It has been noted—in rejecting the necessity of showing actual harm in the failure-to-state-a-claim context—that *"Twyman* dealt with the amount of time an inmate had to use a law library, not the adequacy of the library." *Boulies v. Ricketts*, 518 F.Supp. 687, 688–89 n. 2 (D.Colorado 1981). The same may be said of *Langton v. Fair* and of *Walker v. Mintzes*, 771 F.2d 920 (5th Cir.1985). Similarly, *Hoppins v. Wallace*, 751 F.2d 1161 (11th Cir. 1985), involved the reasonableness of limitations on the number of free stamps per week, and *Jones v. Franzen*, 697 F.2d 801 (7th Cir.1983) involved limitations on photocopying services. Here, the DOC did not impose reasonable limits on the services needed by—and constitutionally guaranteed to—Messere to ensure his access to the courts. Rather, the DOC failed to provide reasonable services altogether.[5]

The DOC declined to provide an adequate library, legal assistance or any other form

---

5. Of course, the distinction between the point at which the state fails to provide services and the point at which it is providing reasonable limitations on services is not always black and white. Rather, those points lie on a spectrum, and at some point on that spectrum, a limitation may become so severe as to constitute the equivalent of a failure to provide meaningful access. Here, the fine shadings of the spectrum need not be delineated, as the failure of the state to provide services to Messere falls clearly in the unconstitutional range.

of legal support to Messere while incarcerated out-of-state. Legal assistance via telephone or mail or a travelling library for the geographically proximate New England Corrections Compact states could presumably have been provided. The Commonwealth could also have contracted with legal services providers to ensure that adequate assistance was available to Massachusetts prisoners like Messere held out of state. So long as Massachusetts participates in the New England Compact, the DOC is obliged to satisfy in some reasonable manner the constitutional right of out-of-state inmates to meaningful access to the courts.

In any event, once a prisoner with standing to do so has demonstrated a state's failure to provide avenues of access to the courts because of lack of library facilities and legal assistance, he has shown all the "prejudice" that is required by *Bounds.* Inquiry into "prejudice" or "actual injury" becomes relevant only when a dispute arises about the reasonableness of the avenues of access. Then "actual injury" may be used as evidence that the access afforded is insufficient because it has demonstrably interfered with the prisoner's conduct of his litigation.

Because I conclude that Messere is able to demonstrate a *Bounds* violation without evidence of actual prejudice, I will allow his motion for partial summary judgment on liability.

### III

Having found liability, I must nevertheless note substantial reservations, in light of the record before me, concerning Messere's ability to show any compensable damages. The claimed actual injury in this case appears wholly contingent, conjectural and attenuated. Apart from modest delay—a circumstance shared by even those litigants with ready access to the courts—Messere has yet to identify any concrete adverse impact on his litigation efforts. Of course, "[e]ven where no actual damages are proved, the successful section 1983 plaintiff is entitled to nominal damages for due process deprivations." *Maldonado*

*Santiago v. Velazquez Garcia,* 821 F.2d 822, 829 (1st Cir.1987) (citing *Carey v. Piphus,* 435 U.S. 247, 266–67, 98 S.Ct. 1042, 1053–54, 55 L.Ed.2d 252 (1978)).

This case will be set for a pretrial conference on October 1, 1990, at which time the plaintiff will be required to specify his proof of damages. At that time, a determination will be made regarding whether this case should proceed to trial or whether, for example, the entry of judgment in the amount of $1.00 nominal damages would be the proper resolution.

### IV

For the foregoing reasons, I find there is no genuine factual dispute that while Messere was incarcerated at CCI–Somers, the defendant DOC did not afford him meaningful access to the Massachusetts courts within the contemplation of *Bounds v. Smith.* Accordingly, I hereby ALLOW Messere's motion for partial summary judgment and DENY that of the DOC defendants on the question of liability.