**David DAHLER, Plaintiff–Appellee,**

v.

**Frank GOODMAN, Education Technician, USP Leavenworth; Debra Roberts, Sr. Case Manager, USP Leavenworth; Page True, Warden, USP Leavenworth, Defendants–Appellants,**

**and**

**Patrick R. Kane, Regional Director, Federal Bureau of Prisons, Kansas City, Kansas; Kathy Hawk, Director, Federal Bureau of Prisons, Washington, D.C., Defendants.**

No. 01–3340.

United States Court of Appeals, Tenth Circuit.

Oct. 3, 2002.

Tamatane Aga, Jr., Olathe, KS, for Plaintiff–Appellee.

Barbara L. Herwig, Dana Joan Martin, U.S. Department of Justice, Civil Division, Appellate Staff, Washington, DC, Nancy Landis Caplinger, Office of the United States Attorney, Topeka, KS, for Defendants–Appellants.

Before KELLY and BALDOCK, Circuit Judges, and BRORBY, Senior Circuit Judge.

## ORDER AND JUDGMENT*

BALDOCK, Circuit Judge.

Defendants Frank Goodman, the education technician at Leavenworth, Debra Roberts, plaintiff's case manager, and Page True, the warden at Leavenworth, bring this interlocutory appeal to challenge the district court's rejection of their qualified immunity defense raised in their motion for summary judgment and motion to reconsider.[1] While an inmate at Leavenworth, plaintiff David Dahler sued these defendants, and others,[2] claiming that they denied him access to the courts by refusing to provide him state law materials that he requested in order to challenge several state convictions that were used to enhance his federal sentence. Defendants contended they were entitled to qualified immunity because they provided Dahler with a constitutionally acceptable means of access to the courts and, in any event, because they could not reasonably have known that their response to Dahler's request would violate his right of access to the courts.

Qualified immunity shields a governmental actor from suit when "a reasonable officer could have believed [the challenged conduct] to be lawful, in light of clearly established law and the information the [actor] possessed." *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). In determining whether a government actor is entitled to qualified immunity, courts generally undertake a two-prong analysis.

First, the court determines whether the facts, taken in the light most favorable to the plaintiff, show that the government actor's conduct violated the plaintiff's constitutional right(s). *See Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). "In the course of determining whether a constitutional right was violated on the premises alleged, a court might find it necessary to set forth principles which will become the basis for a holding that a right was clearly established." *Id.* Second, if the facts alleged could establish a violation of a constitutional right, the court determines if the right was clearly established within the specific context of the case. *Id.* In other words, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202, 121 S.Ct. 2151.

The district court concluded that defendants were not entitled to qualified immunity because Dahler's constitutional right of access to the courts was well established at the time defendants acted, Dahler pre-

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R.App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

2. The district court dismissed the claims against the other two defendants because it lacked personal jurisdiction over one of them and the other was deceased.

sented sufficient facts to establish a violation of that right, and defendants failed to show there were no material issues of fact as to whether their actions were objectively reasonable in light of the existing law and the information that they possessed at the time of the alleged violation.

"The legal issues in [defendants'] claim of qualified immunity are appealable 'final decisions' within the meaning of 28 U.S.C. § 1291. Such legal issues on appeal are decided on a de novo standard of review." *Campbell v. Mercer*, 926 F.2d 990, 991–92 (10th Cir.1991) (citations omitted). "The questions of what the current applicable law is, whether that law was clearly established at the time the official's action occurred, and whether the official's acts were objectively reasonable, are questions of law for the court to determine." *Id.* at 992. Here, defendants contend that even if the facts are viewed in the light most favorable to Dahler, those facts do not establish that defendants violated clearly established law. This is a legal issue over which we have jurisdiction. *See Medina v. Cram*, 252 F.3d 1124, 1130 (10th Cir.2001).

Viewing the facts in the light most favorable to Dahler, they establish the following. On December 24, 1995, Dahler submitted to prison officials a form request for informal resolution, on which he stated: "I am being denied access to the courts due to the fact that the Law Library does not carry any Wisconsin State Law books such as Wis. Statute, or case law and this is clearly a violation of my constitutional rights to access to the Court." Aplt.App. at 192. On January 3, 1996, Dahler received a response to his request stating that, under BOP policy, the prison was not obligated to supply him any books with state statutes. The form indicated that his request had been assigned to Case Manager Debra Roberts, but the response was signed by someone else. Roberts submit-

ted an affidavit stating that she was not consulted about Dahler's request for informal resolution and that she had no hand in drafting the reply. Solely for purposes of this appeal, however, Roberts is willing to assume, arguendo, that she is the person who denied Dahler's request for informal resolution. *See* Br. for Aplt. at 15, n. 4.

Meanwhile, Dahler wrote a letter to Goodman on January 2 in which he explained that he wanted to initiate post-conviction proceedings in Wisconsin and Michigan to challenge convictions in those states that were used to enhance his federal sentence, but the prison library did not contain any legal materials from those states. The letter continued:

> I am at this time requesting that you make arrangements for me to either get Wisconsin and Michigan state law books or some assistance in filing the necessary legal papers to challenge the above mentioned convictions.
>
> For now I am in need of the following books:
>
> 1) A complete set of Wisconsin State Statute and annotations With Criminal and Civil Law procedures.
>
> 2) A complete set of Michigan State statute and annotations dealing with criminal law and procedures.
>
> Also in the future I will need access to case law coming out of both Wisconsin and Michigan.

Aplt.App. at 21.

On January 3, Goodman wrote Dahler a letter in which he recognized the prison's obligation "to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 24. Goodman went on to state, however, that the prison fulfilled this obligation

by providing adequate legal supplies and federal law materials . . . for inmates to prepare all of their necessary legal documents.

The Bureau of Prisons is not mandated, nor required to purchase and maintain state legal materials. . . .

. . . [Y]ou have access to the Kansas University Law School's clinical program, as well as the opportunity to correspond with the Wisconsin and Michigan Department of Corrections for assistance with your State needs.

*Id.*

On January 11, Dahler filed a BP–9 request for administrative remedy in which he asserted that the BOP's policy was wrong because the prison had an obligation to give him assistance or law books to file his legal papers. He explained that he needed to file several post-conviction matters and two law suits in the state courts of Michigan and Wisconsin. The library had no books from those states, and he had been unable to get any assistance in the matter. He concluded by referencing his letter to Goodman and citing two circuit court cases concerning access to courts. On January 26, Warden True signed a written response to Dahler's BP–9 that was virtually identical to Goodman's letter of January 3. Indeed, Goodman stated in this affidavit that he drafted the response for Warden True's signature. Warden True also gave Dahler instructions for applying to the University of Kansas clinical program ("the Defender Project").

Thereafter, Dahler appealed the denial of his BP–9 to the Regional Director of the BOP and then to the Administrator of National Inmate Appeals. At each level he was denied his request for statutes from Michigan and Wisconsin and told to seek assistance from the Defender Project. The final denial came on May 31, 1996.

Meanwhile, Dahler filled out an application for legal assistance from the Defender Project on February 6 in which he stated that he wanted to file post-conviction proceedings on several prior convictions in three different states: a 1964 Wisconsin conviction; a 1970 Wisconsin conviction; a 1977 Michigan conviction; and a 1985 Iowa conviction. He said he was represented by a lawyer in one case, but entered involuntary guilty pleas in the other two cases. He also asked for help in filing two cases in Wisconsin.[3]

David Hall, the Director of the Defender Project, replied on February 15 stating that the Defender Project would be happy to consider helping him with his post-conviction issues, asking that Dahler forward any documents he had relating to his prior convictions, and stating that Dahler had been put on a waiting list for assignment. Dahler replied, giving Hall the case numbers of his prior convictions and a transcript of the plea hearing in his Michigan case. Dahler said he wanted to challenge the Michigan conviction on the ground that his waiver of counsel was not knowing and voluntary.

Dahler received further correspondence from the Defender Project telling him that his case was about to be assigned to an intern and asking again for any pertinent documents he had. On June 17, Stacey Donavan from the Defender Project wrote saying that she had come to the prison to see Dahler on June 6, but was told by the guards that he was no longer interested. She asked whether Dahler still wanted help from the Defender Project and told him how to reach her if he did.

---

**3.** The district court correctly ruled that defendants had no legal obligation to provide Dahler assistance with respect to his two state civil cases, so we will not discuss them further.

On June 21, after receiving the final denial of his administrative grievance, Dahler verified the present complaint against defendants and it was filed in the district court on July 9. Thereafter, Dahler continued to correspond with Stacey Donavan, who ultimately informed him in a series of letters that the Defender Project could not assist him with his Michigan post-conviction matters because a review of the transcript from his Michigan case revealed that he had no meritorious challenge to his waiver of counsel in that case, and that it could not assist him with his Wisconsin post-conviction matters without further information from him about those cases. As of the time Dahler responded to defendants' summary judgment motion, he had not been able to file post-conviction proceedings in either Wisconsin or Michigan because, he said, he did not know what procedures to follow.

Defendants contended that the evidence established that they provided Dahler adequate access to the courts. They pointed to undisputed evidence that the law library at Leavenworth contains a large quantity of federal and general criminal law materials to assist inmates in filing direct and collateral challenges to their convictions,[4] that it is staffed with inmate law clerks,[5] and that it has typewriters and copy machines for the inmates to use. Defendants contended that it would be unreasonable to require the prison to bear the expense of providing complete sets of state materials, as Dahler requested, especially in light of the fact that Leavenworth houses inmates from all over the country. Finally, defendants pointed to undisputed evidence that the Defender Project, to which they referred Dahler, had a contract with Leavenworth to provide legal assistance to the prison's inmates. Under the contract, the Defender Project gave legal advice to inmates, assisted them in preparing pleadings and briefs, and sometimes represented them at hearings. Among the legal matters covered by the contract were "collateral attacks against foreign state convictions." Aplt.App. at 135. Dahler's correspondence with the Defender Project, defendants argued, established that the project attempted to provide him legal assistance on his Wisconsin and Michigan post-conviction matters.

The district court rejected defendants' argument that they provided Dahler constitutionally adequate access to the courts. The court reasoned that, "[r]egardless of the supply of legal materials provided at the USP Leavenworth library, it is undisputed that the library did not contain the necessary state materials for Plaintiff to file meaningful petitions for post-conviction relief in the state courts of Wisconsin and Michigan." Aplt.App. at 228. Further, "[w]hile the Defender Project may be of benefit to many prisoners at USP Leavenworth, it was of no benefit to Plaintiff in this case." *Id.* at 228–29. Finally, "[w]hile the cost of providing legal materials to prisoners is a legitimate penological interest, 'the cost of protecting a constitutional right cannot justify its total denial.'" *Id.* at 229 (quoting *Bounds v. Smith,* 430 U.S. 817, 825, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977)).

In their motion for reconsideration, defendants additionally argued that, even if they did not in fact provide Dahler ade-

---

4. Although Dahler disputed whether the library contained all the materials defendants said it did, he did not dispute that it contained a large volume of federal and general criminal law materials to assist inmates in challenging their convictions and/or sentences.

5. Dahler did not dispute that the library is staffed with inmate law clerks, but he did dispute the training and ability of those law clerks to provide meaningful assistance.

quate access to the courts when they refused his request for state law materials and instead referred him to the Defender Project, their actions were, nonetheless, objectively reasonable in light of the clearly established law and the information they possessed at the time they acted. Defendants noted that the law was clearly established that one constitutionally acceptable method of providing inmates meaningful access is to provide them access to persons trained in the law. Defendants contended that the Defender Project was under contract to provide inmates assistance on precisely the types of legal matters on which Dahler sought assistance, and that defendants had no way of knowing at the time they acted on Dahler's request that the Defender Project would not ultimately help Dahler prepare and file anything in state court. Therefore at the time they denied Dahler's request for Wisconsin and Michigan annotated statutes and, instead, referred him to the Defender Project, defendants did not reasonably know that they were denying Dahler meaningful access to the courts. The district court denied defendants' motion for reconsideration, concluding it presented "no basis to disturb [the court's] earlier rulings." *Id.* at 356.

Inmates like Dahler have a constitutional right to "adequate, effective, and meaningful" access to the courts. *Bounds v. Smith,* 430 U.S. 817, 822, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). "[This] fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828, 97 S.Ct. 1491. The tools prison officials must provide inmates are those they need "in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Lewis v. Casey,* 518 U.S. 343, 355, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996).

The right of access "guarantees no particular methodology," however. *Id.* at 356, 116 S.Ct. 2174. Prison officials "may choose from among a variety of methods or combinations thereof in meeting their constitutional obligations." *Carper v. DeLand,* 54 F.3d 613, 616 (10th Cir.1995) (quotation omitted). "[I]nmates do not have the right to select the method by which access will be provided." *Penrod v. Zavaras,* 94 F.3d 1399, 1403 (10th Cir. 1996). One method of providing constitutionally sufficient access is to provide "adequate assistance from persons trained in the law." *Bounds,* 430 U.S. at 828, 97 S.Ct. 1491. Prison officials at Leavenworth chose to fulfill their constitutional obligations to Dahler by providing him both access to a library stocked with federal law and general criminal law materials and access to legal assistance from the Defender Project.

Dahler does not contend that there were any systemic problems with the Defender Project that made it an invalid method of providing constitutionally adequate access to the courts to raise state post-conviction challenges. We note that at least one other circuit has determined that the Defender Project provides inmates at Leavenworth adequate assistance from persons trained in the law. *See Blake v. Berman,* 877 F.2d 145, 146–47 (1st Cir.1989).

Rather, Dahler contends that the Defender Project did not prove to be an adequate means of access to the state courts for him. This fact might, arguably, be sufficient to get Dahler past the first prong of the qualified immunity analysis. *Cf. Petrick v. Maynard,* 11 F.3d 991, 995 (10th Cir.1993) ("The constitutional guarantee of 'adequate, effective, and meaning-

ful' access to the courts would mean little if a state could satisfy its affirmative duty by a mere failed attempt to accommodate an inmate who has identified a specific research problem and who would otherwise be unable to pursue that legal claim without obtaining the legal materials."). It is not sufficient to get him past the second prong.

Dahler asked defendants to provide him either the state statutes he listed or assistance in filing his state post-conviction proceedings. The Defender Project was under contract to the prison to provide legal assistance on exactly the kinds of proceedings Dahler wanted to file. At the time defendants denied Dahler's request for the state statutes and, instead, told him to seek assistance from the Defender Project, they had no reason to know, or even to suspect, that the Defender Project would not be able to provide Dahler adequate assistance with his legal needs.[6] Defendants reasonably believed that they were fulfilling their constitutional obligation to provide Dahler meaningful access to the courts when they responded to his request for state law materials. It certainly would not have been "clear to a reasonable officer that [this] conduct was unlawful in the situation [defendants] confronted." *Saucier*, 533 U.S. at 202, 121 S.Ct. 2151. The district court, therefore, erred in denying defendants the protections of qualified immunity.

The judgment of the United States District Court for the District of Kansas is REVERSED, and the matter is RE-MANDED for further proceedings consistent with this order and judgment.

After examining the briefs and appellate record, this panel has determined unani-

---

**6.** There is no evidence that Dahler ever informed any of these defendants that the Defender Project was not able to help him and then renewed his request for state materials in light of that information. In fact, Dahler had already instituted suit against defendants by the time he learned that the Defender Project would not be able to help him after all.